**Electronically Filed
Intermediate Court of Appeals
29569
28-DEC-2010
07:52 AM**

NO. 29569

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


SARASOTA CCM, INC., a Florida corporation, Plaintiff-Appellee,
v. ROBERT LEVINE, Defendant-Appellant, v.
SARASOTA CCM, INC., a Florida corporation, et al.,
Counterdefendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 05-1-160K)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Leonard and Ginoza, JJ.)

Defendant/Counterclaim-Plaintiff/Appellant Robert M. Levine (**Levine**), a Hawai'i resident, appeals from Findings of Fact and Conclusions of Law, filed December 8, 2008, and the Judgment entered January 21, 2009, in the Circuit Court of the Third Circuit (**Circuit Court**) in favor of Plaintiff/Counterclaim-Defendant/Appellee Sarasota CCM, Inc. (**Sarasota**), a Florida corporation.[1]

On appeal, Levine maintains that: (1) the Circuit Court erred in finding that the senior lienholder foreclosed on its senior deed of trust, thereby resulting in the loss of Sarasota's

---

[1] The Honorable Ronald Ibarra presided.

junior security interest in certain real property located in Utah; (2) the Circuit Court reached the wrong conclusion in its application of Utah law; and (3) the Circuit Court erred in finding that there was no evidence to support Levine's allegations of fraud.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Levine's points of error as follows:

(1) The Circuit Court's findings that the senior lienholder foreclosed on the Utah property, rendering Sarasota an unsecured junior lienholder, was not clearly erroneous. The Circuit Court's finding concerning the Utah foreclosure is supported, *inter alia*, by the following evidence presented at trial: (1) on June 7, 2001, the senior lienholder duly recorded a Notice of Default on its senior deed of trust, announcing that the senior beneficiary "does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby"; (2) in addition to specifying that the principal amount owing on the senior note was $1,495,947.49 plus interest, the Notice of Default stated that "[t]here is also due all of the expenses and fees of these foreclosure proceedings"; (3) Levine testified that he received a notice of foreclosure; (4) Levine testified that, in anticipation of foreclosure, he attempted to sell the Utah property but was unsuccessful; and (5) Levine, himself, testified

that the first deed of trust had indeed been foreclosed. Levine did not object to any of the aforementioned evidence or offer any rebuttal evidence.

There was also substantial evidence presented to support the Circuit Court's finding that the foreclosure sale resulted in the loss of Sarasota's security interest in the Utah property. Under the applicable Utah Trust Deed Act, proceeds from a trustee's foreclosure sale are applied "first, to the costs and expenses of exercising the power of sale and of the sale, . . . second, to payment of the obligation secured by the trust deed, and the balance, if any, to the person or persons legally entitled to the proceeds." Utah Code Ann. § 57-1-29(1)(a) (West 2008). As a junior lienholder, Sarasota's predecessor-in-interest, Keybank, was entitled to excess proceeds from the sale of the Utah Property. See Randall v. Valley Title, 681 P.2d 219, 221 (Utah 1984) (acknowledging that the junior lienholder was entitled to excess proceeds at the conclusion of sale under a trust deed because, "[a]lthough § 57-1-29 does not specifically mention junior trust deeds or lienholders, the surplus from the sale stands in the place of the foreclosed real estate and is subject to the same liens and interests that were attached to it"). Plaintiff's Exhibit 2, a statement of Levine's Keybank account received by Sarasota in December of 2003, indicated that the last payment made on the account was made on January 31, 2001, and that no excess proceeds from the

foreclosure sale were credited to Levine's account with KeyBank. Again, Levine presented no rebuttal evidence.

After carefully reviewing the record, and in light of the evidence presented, we conclude that the Circuit Court's finding that the senior deed of trust had been foreclosed, rendering Sarasota an unsecured creditor, was not clearly erroneous.

(2) Levine further argues that Sarasota should not have been deemed a sold-out junior lienholder because Sarasota failed to prove that foreclosure of the senior deed of trust took place and that Sarasota's junior security interest in the Secured Property had been exhausted. Thus, Levine argues, the Circuit Court reached the wrong conclusion in its application of Utah law because it applied the law to an erroneous finding. Levine asserts that, instead, the following conclusions should have been reached: (1) Sarasota was bound by the "one-action" rule; (2) Sarasota failed to comply with the statute of limitations in the Utah deficiency statute; and (3) further noncompliance with the Utah deficiency statute resulted from Sarasota's failure to prove the fair market value of the Secured Property as required by the statute.

As discussed above, we conclude that the Circuit Court's finding that the senior deed of trust had been foreclosed, rendering Sarasota an unsecured junior lienholder, was not clearly erroneous.

Utah case law is clear that a sold-out junior lienholder, *i.e.*, a junior lienholder whose security interest in real property was extinguished through a foreclosure sale on a senior interest, is not bound by the "one-action" rule. See, e.g., City Consumer Services, Inc. v. Peters, 815 P.2d 234, 236-37 (Utah 1991).

Levine also asserts that the instant action is barred because Sarasota failed to seek recovery within the three-month statute of limitations provided in the deficiency statute of the Utah Trust Deed Act, codified as Utah Code Ann. § 57-1-32 (West 2001). In G. Adams Ltd. P'ship v. Durbano, 782 P.2d 962, 963-64 (Utah Ct. App. 1989), however, the Utah Court of Appeals declined to apply the three-month limitation to a non-foreclosing junior, reasoning that the statute only applied to the creditor who foreclosed. Consistent with the Utah case law, the Circuit Court concluded that Sarasota, as a sold-out, unsecured junior lienholder, was not barred by the three-month statute of limitations in Utah's deficiency statute.

Levine also asserts that the Circuit Court failed to comply with the deficiency statute by failing to determine the fair market value of the Utah Property. In City Consumer Services, however, the Utah Supreme Court expressly stated that in an action involving a sold-out junior lienholder, the value of the property is not relevant because the "action is not for

5

deficiency judgment, but rather is simply a suit on [the] note." City Consumer Services, 815 P.2d at 240.

Accordingly, we conclude that the Circuit Court did not err in determining that Sarasota became an "unsecured general creditor" and that Sarasota was not limited by the fair market value provision of Utah's deficiency statute.

(3) Levine argues that the Circuit Court erred in finding that there was no evidence supporting a defense of fraud and that Levine did not establish his counterclaim fraud allegations by clear and convincing evidence. Levine cites no legal authority to support his argument; rather, Levine relies on a recitation of select purported "facts" to support his allegations of fraud. Based on Levine's assertions, it is unclear whose or which, if any, representations or actions Levine alleges constituted fraud. Under Utah law, to successfully establish a fraud claim, the party asserting fraud must show by clear and convincing evidence

> (1) [t]hat a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.

Prince v. Bear River Mut. Ins. Co., 56 P.3d 524, 536-37 (Utah 2002) (citations omitted). Furthermore, "[a] person cannot be liable for fraud unless he made the false representations himself, authorized someone to make them for him, or participated

in the misrepresentation in some way, such as through a conspiracy." Israel Pagan Estate v. Cannon, 746 P.2d 785, 792 (Utah Ct. App. 1987).

The Circuit Court did not err in concluding that Levine failed to meet his burden. There is no evidence on the record, nor does Levine allege, that Sarasota or KeyBank, made false or reckless representations, authorized someone to make such representations, or had any connection to or participated in any such representations. Even though Levine alleges that he was deceived by members of an investment program, he also testified that he chose not to pursue any legal action against the program members who deceived him.

For these reasons, we affirm the Circuit Court's January 21, 2009 Judgment.

DATED: Honolulu, Hawai'i, December 28, 2010.

On the briefs:

Charles H. Brower
for Defendant-Appellant

Gregory T. Grab
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

7